UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN GRAY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>L.B. FOSTER COMPANY, INC., )<br>)<br>Defendant. )<br>) | Civil Action Number<br>**2:15-cv-01903-AKK** |

## **MEMORANDUM OPINION**

John Gray was injured when he slipped and fell while servicing equipment at LB Foster's pipe-coating plant. He filed this lawsuit, alleging negligence and wantonness, doc. 1, and LB Foster filed a motion for summary judgment, doc. 47. The motion is fully briefed, docs. 48, 52, 53 & 54, and ripe for consideration. After reading the briefs,[1] viewing the evidence, and considering the relevant law, the court grants the motion.

I. **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any

---

[1] Gray correctly notes that, at a combined thirty-five pages, LB Foster's initial brief in support of its motion, docs. 48 & 52, exceeds the court's thirty page limit. Doc. 11. The court declines to strike the excess pages, however, as Gray requests. Instead, the court will make a note internally, and places counsel on notice that it will strike entirely their next filing, if any, in any case before the undersigned that exceeds the page limits.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND

This case arises out of an accident that occurred at a pipe-coating plant. The plaintiff, John Gray, is an electrician employed by the American Cast Iron Pipe Company (ACIPCO), a pipe manufacturer with its principal facilities in Birmingham, Alabama. Docs. 1 at 4; 48 at 2; 49-1 at 9, 221. The ACIPCO property covers a wide swath of land, which is closed to the public, protected by physical barriers, and patrolled by ACIPCO security guards twenty-four hours a day. Doc. 49-1 at 10. ACIPCO leases a pipe-coating plant on its property to the defendant, LB Foster, a construction equipment manufacturer. Docs. 1 at 3; 9 at 1; 49-1 at 3, 9-10.

At some point in 2013, ACIPCO contracted LB Foster to coat the pipes for one of its manufacturing jobs. Docs. 48 at 3; 49-1 at 11-12, 241. Most of LB Foster's pipe-coating orders require the application of "fusion bonded epoxy"

coating onto the exterior of the pipes. Docs. 48 at 3-4; 49-1 at 3-5, 10. The 2013 order, however, required both exterior and interior coating. Docs. 48 at 3-4; 49-1 at 3-5, 12, 60. Before the order, LB Foster had performed interior coating, or "inner diameter coating," only three times, doc. 49-1 at 232, so it had to re-launch its inner diameter blast line, or "ID blast line," an area of the plant where highly specialized machines clean the pipes before coating. Doc. 49-1 at 12.

One of these machines is a "blast head cart," which moves on tracks and sprays abrasive steel "blast shot" beads inside the pipe to clean out any dirt and debris. Docs. 49-1 at 12; 55-3 at 2. The "rear blast cabinet," or "dust catcher," then captures many of these beads and other debris. Doc. 49-1 at 12. A conveyor belt, called the "reclaim conveyor," runs between the blast head cart and the blast cabinet and catches most of the remaining blast shot beads for reuse. Doc. 49-1 at 12. This conveyor belt is guarded by metal plates, painted yellow and positioned directly above the belt. Doc. 49-1 at 13. The yellow guard plates tilt at a downward angle so that the blast shot will fall onto the conveyor belt below. Docs. 49-1 at 13; 49-2 at 79-85. These devices are not capable of capturing all the blast shot beads, however, so much of it remains on the floor. Doc. 48 at 8-11. The beads are difficult to differentiate from dirt and dust and are therefore hard to see. Doc. 53-1 at 29. Walking on the beads poses a hazard that is like "walking on ice." Doc. 49-1 at 38, 82. To reduce the risk of slipping, LB Foster keeps brooms

on the floor so that employees working on the ID blast line can periodically sweep up any remaining discarded blast shot.  Doc. 49-2 at 94.

LB Foster employs its own electricians to service its equipment, but, per an agreement with ACIPCO, LB Foster can request that some of ACIPCO's electricians be "on call" during busier periods.  Docs. 1 at 5; 48 at 2; 49-1 at 9-11, 59-63.  ACIPCO's on call electricians have free access to the LB Foster plant, but generally sit in their trucks and wait for a call after clocking in at the electronics department.  Doc. 49-1 at 4, 63, 64, 103.

On June 21, 2014, Gray was working an on call shift and entered the LB Foster plant, although it is not clear whether LB Foster actually requested an on call electrician that day.  Docs. 48 at 2; 49-1 at 6, 44; 53 at 3.  According to eyewitnesses and LB Foster's incident report, Gray was inspecting one of the machines on the blast line when he suddenly slipped and fell onto the yellow guard plates above the conveyor belt.  Docs. 48 at 2; 49-1 at 6, 44; 53 at 3; 53-1 at 1-7.  The fall knocked Gray unconscious, and first responders had to resuscitate him.  Docs. 49-1 at 6, 68, 98; 49-2 at 79.  Gray has no recollection of what happened that day, doc. 49-1 at 146, but the parties agree that he likely slipped on the blast shot beads.  *See* docs. 48, 52, 53, & 54.  Witnesses give conflicting accounts as to whether there was a caution sign warning of the danger of blast shot at the time of the accident.  *Compare* doc. 55-2 at 20 *with* docs. 53-1 at 74 and 49-1 at 106.

## III. ANALYSIS

Gray filed this lawsuit alleging that LB Foster is liable for negligence and wantonness for failing to warn him of the danger of the ID blast line. Doc. 1. LB Foster has moved for summary judgment on both claims. Doc. 48.

### A. Negligence claim

To sustain a negligence claim under Alabama law, a plaintiff must establish "a legal duty owed to the [plaintiff] or to a class of persons to which the plaintiff belongs, and a breach of that duty, proximately resulting in the injury." *Graveman v. Wind Drift Owners' Ass'n, Inc.*, 607 So. 2d 199, 203 (Ala. 1992). In premises liability cases, the defendant's duty depends on whether the plaintiff was a trespasser, a licensee, or an invitee. When a plaintiff has entered the defendant's property with "consent to bestow some material or commercial benefit," she is an "invitee," and the property owner owes her the duty "to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010). But where the visitor is a "social guest . . . with no business purpose," she is a "licensee," and the property owner owes her only a duty not to "willfully, wantonly, or negligently injure" her. *Id.*

The parties here agree that, as an on call electrician, Gray was, at minimum, a licensee. The parties disagree, however, on whether Gray is an invitee. According to LB Foster, Gray does not qualify as an invitee because "there is no evidence LB Foster requested ACIPCO's assistance on the day of the accident" and "no management or supervising employee at LB Foster knew Gray was inside the facility until after the accident." Doc. 48 at 25. LB Foster further argues that, even if Gray were expected to be on the premises, "[t]here is no evidence that LB Foster either invited or expected Gray to walk on the blast line that afternoon." Doc. 48 at 26.

Even assuming that no one from LB Foster called Gray to the plant that day, Gray was not a "social guest with no business purpose." *See Galaxy Cable*, 58 So. 3d at 98. Gray was on the property to confer a commercial benefit, namely to be present in the event that equipment broke down. *Id.* The record demonstrates that, although the on call electricians generally stay in ACIPCO's electrical department or in their trucks until LB Foster requests their assistance, *see* doc. 49-1 at 76-77, it is not unusual for them to check on things at the LB Foster plant, even before they are summoned.[2] Doc. 53 at 4-5. Accordingly, for this motion, the court must assume that Gray was an invitee.

---

[2] One of these electricians, Kenneth Smith, testified that, even when not called, "sometimes [they] might get out and just walk in there and check and look." Doc. 49-1 at 77.

LB Foster owes to invitees "the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *See Galaxy Cable*, 58 So. 3d at 98. Despite improving safety protocols, it is axiomatic that industrial plants are generally not safe. Indeed, Gray admitted as much when he testified that it is "obvious that working around heavy equipment can be dangerous from time to time." Doc. 49-1 at 139. Still, Gray argues that the blast shot beads were a hidden defect and challenges LB Foster's contention that the danger of the blast shot was "open and obvious" and that he knew or should have known of the danger. Docs. 1; 48 at 16-23; 52 at 1-6; 53 at 2-20. Though the question of whether a defect is open and obvious is generally a question of fact for the jury, *see Breeden v. Hardy Corp.*, 562 So. 2d 159, 160–61 (Ala. 1990), LB Foster urges the court to hold that "any hazard posed by the presence of blast shot was open and obvious as a matter of law." Doc. 48 at 20.

A claim that a premises defect was open and obvious is "an affirmative defense on which [the defendant] bears the ultimate burden of proof." *Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1194 (Ala. 2002). To prevail on an open and obvious defense, the owner-invitor must establish that the invitee either knew or should have known of the defect. *Id.* at 1195. Such a showing generally requires one of three types evidence: 1) that the defect is "open and obvious to

anyone;" 2) that the owner has told the invitee or his employer "all it knows" about the defect; or 3) that the owner reasonably expects the invitee to have "expertise and previous experience on the premises." *S. Alabama Brick Co. v. Carwie*, 214 So. 3d 1169, 1178-79 (Ala. 2016). The key question is whether it "was objectively reasonable for the invitor to expect the invitee to know" of the risk. *Id.* at 1177. However, "[t]here is no duty to warn an independent contractor who has equal or superior knowledge of a potential danger." *Id.* at 1176.

Here, it is undisputed that ACIPCO, the independent contractor and Gray's employer, has, at a minimum, equal knowledge of the potential danger of blast shot beads. As LB Foster puts it in its brief, ACIPCO electricians have "the same, if not greater, knowledge and expertise about LB Foster's operations at the plant." Doc. 48 at 22. LB Foster's statement is consistent with the record. Specifically, James Morris Hyche, a foreman in the ACIPCO electrical department, stated that he and other ACIPCO electricians were familiar with the LB Foster plant and did not need any warnings to be cautious when working around blast shot areas. Docs. 48 at 21; 49-1 at 5. Two of Gray's supervisors, William Garry Shirley and Marvin Mize, testified to the same. Docs. 48 at 21. Shirely stated in an affidavit that "[a]ll of the 'on call' electricians knew there was blast shot around the ID line at LB Foster" and therefore knew to be careful when walking around it. Doc. 49-1 at 38. Mize, in response to a question about whether "it was important for ACIPCO

9

electricians to understand the general process of the machines that they had to repair," answered that "[y]ou couldn't fix it if you w[ere]n't familiar with it. You would have to know the operation of any and all machines, that was all part of the process of learning." Doc. 49-2 at 24. And in response to whether the blast shot on the floor was a "known hazard," Mize answered "yes," explaining that it was "common knowledge" to anyone that worked at ACIPCO. Doc. 49-2 at 34-35.

Under Alabama law, "the existence of a duty by a premises owner to a business invitee, and particularly to an independent contractor, depends on superiority of knowledge." *S. Alabama Brick Co.*, 214 So. 3d at 1178. The testimony of ACIPCO's foreman and supervisors establishes that LB Foster did not have superiority of knowledge as to the danger posed by blast shot beads and that it was reasonable for LB Foster to expect ACIPCO electricians to be familiar with the dangers of this part of the plant. *See id.* Moreover, "when a premises owner is found to owe a duty to warn, that duty is satisfied, as a matter of law, when the contractor or supervisory personnel has knowledge of the dangerous condition." *Id.* at 1179. As the Alabama Supreme Court put it:

> Where a premises owner can reasonably expect that its contractor knows as much or more than the premises owner does regarding a dangerous condition—whether this is so because the danger is open and obvious to anyone, because the owner has told the contractor all it knows, or because of the contractor's expertise and previous experience on the premises—the superiority-of-knowledge test is not met and the premises owner has no further duty to warn the contractor. By extension, in that circumstance, the premises owner has

> no additional, direct duty to warn the contractor's employees or any subcontractors. To hold otherwise would be to say that a premises owner, despite hiring a contractor whom the owner, for one of the reasons stated above, reasonably expects knows as much of more about the owner's land, building, or fixtures as does the premises owner, must somehow "pull aside" or otherwise communicate directly with each and every employee of the contractor, subcontractor, employee of any subcontractor, etc. Obviously, at the point at which the contractor knows as much or more as does the premises owner regarding the land, building, or fixtures, the responsibility for sharing that information with its own employees or with subcontractors falls to the contractor.

*Id.* at 1178-79. On this record, and in particular the testimony of ACIPCO's supervisory personnel, LB Foster has met its burden on the open and obvious defense, and established that ACIPCO has the requisite expertise or experience on LB Foster's premises, that LB Foster did not have the superiority of knowledge, and showing, as a result, that it satisfied the duty to warn as a matter of law. *See id.*

In addition to satisfying the duty to warn, as a matter of law, through the knowledge of the dangerous condition of ACIPCO's supervisory personnel, alternatively, LB Foster has also established that it reasonably believed that ACIPCO's electricians have expertise and previous experience with LB Foster's ID blast line such that they would know of the dangers of the ID blast line. Gray disputes this, contending that he and other electricians "had little or no experience with that particular machine in that particular part of the plant." Doc. 53 at 6. In support, he cites his own deposition testimony that, although he had entered LB

Foster's plant before to repair printers in the office, he "doesn't remember" whether he had ever entered the part of the plant where blasting is performed. Docs. 53 at 6; 49-1 at 149. It is evident that the head injury Gray suffered from the accident at issue continues to impact his memory. However, saying that he "doesn't remember" does not create a factual issue of dispute when the evidence, including his own interrogatory answers,[3] refutes his contentions. *See, e.g.*, *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]hen documentary evidence blatantly contradicts a plaintiff's account . . . a court should not credit the plaintiff's version on summary judgment") (internal quotations omitted). Similarly, Gray's reliance on his co-worker Kenneth Smith's testimony that Smith had "never seen [blasting] done externally before," where the blasting is done "out in the open" and where the blast shot beads "went everywhere," docs. 49-1 at 57-59, 85; 53 at 6, does not help create a factual dispute as to whether Gray had the expertise and previous experience in the ID blast line.

Ultimately, even if Gray is correct that he was not aware of the danger of the blast shot beads, his claim would still fail. The question of openness and obviousness "is measured by an objective standard, not the subjective state of the invitee's knowledge." *S. Alabama Brick Co.*, 214 So. 3d at 1176-77. The question is thus whether it was objectively reasonable for LB Foster to expect ACIPCO

---

[3] In Gray's response to one of LB Foster's interrogatories, Gray stated that he had visited this part of the plant "five or more times" to check the limit switches. Doc. 49-2 at 130.

electricians to have "equal or superior knowledge" about the dangers of blast shot. *Id.* The record is rife with testimony from ACIPCO supervisory employees that they were familiar with this area of the plant, the open and obvious dangers, and the need to exercise caution when working there. Docs. 49-1 at 5, 11-12, 38; 49-2 at 24, 34-35. Gray has failed to rebut LB Foster's evidence, and saying that he lacked subjective knowledge of the dangers of the ID blast line falls short of creating a trial issue on whether it was reasonable for LB Foster to assume he did. *See S. Alabama Brick Co.*, 214 So. 3d at 1176-79. Based on this record, LB Foster has shown that it was objectively reasonable for it to expect that ACIPCO electricians had "equal or superior knowledge" of the danger of blast shot. *See id.*

Therefore, the negligence claim fails because LB Foster satisfied its duty to warn, as a matter of law, through the undisputed evidence from ACIPCO supervisory personnel that they knew as much as or more than LB Foster regarding the dangerous condition. *See id.* at 1178-79. Alternatively, the claim fails because it was reasonable for LB Foster to expect ACIPCO electricians to have equal or superior knowledge about the dangers of blast shot. *See id.* at 1176-77.

**B. Wantonness claim**

Wantonness is "not merely a higher degree of culpability than negligence," but rather an independent cause of action under Alabama law. *Ex parte Essary*, 992 So. 2d 5, 9-10 (Ala. 2007). To maintain a wantonness claim, a plaintiff must

show "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Id.* The distinction between negligence and wantonness is subtle, but important, as they are "qualitatively different tort concepts of actionable culpability." *Id.* Whereas negligence involves careless inadvertence, wantonness involves a conscious recklessness in either acting or failing to act. The plaintiff does not need to show, however, that "the actor kn[ew] that a person is within the zone made dangerous by his conduct" or that the actor "entertained a specific design or intent to injure the plaintiff" to prove wantonness. *Id.* Rather, the plaintiff need only show that "the actor is 'conscious' that injury will likely or probably result from his actions." *Id.*

In support of his wantonness claim, Gray points to evidence that LB Foster was not enforcing one of the procedures in its own safety manual requiring contractors to first go to the main office so that an LB Foster employee could escort them to where they were going. Doc. 53 at 14-20. But even assuming that LB Foster failed to follow its own procedures, this does not rise to the level of conscious disregard for the safety of visitors. *See Ex parte Essary*, 992 So. 2d at 9-10. More importantly, where a negligence claim fails because the defendant has no duty to warn of an open and obvious danger, a "wantonness claim must also fail as a matter of law." *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 745-46 (Ala. 2009).

Therefore, because the danger of the blast shot was open and obvious to Gray, he cannot assert a wantonness claim against LB Foster. *See id.*

## **CONCLUSION**

Consistent with this opinion, LB Foster's Motion for Summary Judgment, docs. 47 and 52, is due to be granted.[4] A separate order will be entered.

**DONE** the 27th day of November, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] Consistent with footnote 1 of this opinion, Gray's motion to strike, doc. 56, is **DENIED**.